**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

CIVIL ACTION NO. 23-122-DLB-EBA

LOUIS MATA, JR.                                                                    PLAINTIFF

v.                          <u>MEMORANDUM OPINION AND ORDER</u>

CITY OF GRAYSON, et al.                                              DEFENDANTS

*** *** *** ***

This matter is before the Court upon Defendants' Motion for Summary Judgment. (Doc. # 18). Plaintiff having filed his Response (Doc. # 25), and Defendants having filed their Reply (Doc. # 28), the Motion is ripe for the Court's review. For the reasons set forth herein, Defendants' Motion for Summary Judgment (Doc. # 18) is **granted in part and denied in part**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from Louis Mata's arrest by the Grayson, Kentucky police. The events surrounding the arrest are contested by the parties. The Court will take care to note the facts that are in dispute.[1] In the early afternoon of July 24, 2023, while driving his police cruiser, Defendant Roy Ison received radio traffic describing a "rolling domestic" in the area. (Deposition of Roy Ison, Doc. # 25-10 at 7:17-19). The radio dispatch came from Assistant Chief Dean Ison. (*Id.* at 15:8-9). Dean Ison issued the

---

[1]      At the time of Mata's arrest, Grayson Police Officers did not wear body cameras nor were their police cruisers equipped with in-car cameras. (Deposition of Tony Cantrell, Doc. # 25-11 at 24:16-25:15). Accordingly, the parties have not submitted any video footage of these events.

dispatch in response to a tip he received from Brenda Williams.  (Witness Statement of Brenda Williams, Doc. # 18-2 at 2).  Williams, a social worker with the Commonwealth of Kentucky, informed Dean Ison that she "witnessed a man and woman in a pick-up truck directly in front of [her].  The woman was driving, and the man was taking his left hand and with his fist, punching the lady in her right cheek/neck area."  (*Id*. at 1).  Williams observed the man punch the woman roughly four times while "the woman continued to move toward the door as close as she could to get away while continuing to drive."  (*Id*.).  Dean Ison relayed the call to Grayson Police Officers in the area—including Roy Ison.  (Doc. # 25-10 at 15:10).  Roy Ison arrived on the scene after fellow Grayson Police Officer Justin Stone had stopped the vehicle described by Brenda Williams.  (*Id*. at 15:15-19).  At this point the parties' stories diverge.

According to Mata, on July 24, 2023, he and his then-girlfriend Joanne Williams were driving to Mata's workplace to see if he could work some extra hours.  (Deposition of Louis Mata, Jr., Doc. # 25-8 at 20:4-8).  In her deposition, Williams testified that the couple was driving to Mata's workplace so that Mata could *call off from* work because "he couldn't sober up."  (Deposition of Joanne Williams, Doc. # 25-9 at 17:1-7).  After being informed that he could not pick up an extra shift, Mata and Joanne[2]—who was driving the vehicle—headed home.  (Doc. # 25-8 at 20:9-14).  On their way home, Mata claims, a song came on the radio that inspired a "playful" exchange of "pokes" and "tickles" between himself and Joanne.  (*Id*. at 21:25-22-3; 23:7-20).  Williams also stated that Mata was "tickling" her in a playful, non-violent manner.  (Doc. # 25-9 at 22:3-17; 25:9-14).

---

[2]  The Court will refer to Ms. Williams as Joanne throughout this Order to differentiate her from Brenda Wiliams.

Later, during Mata and Joanne's journey home, multiple police cruisers appeared behind them. (Doc. # 25-8 at 24:12-20). Joanne pulled the vehicle into a nearby Speedway service station and "three or four officers" approached. (*Id.* at 25:9). Mata asserts that an officer, who he later learned to be Roy Ison, opened the passenger door and asked him to step out of the vehicle. (*Id.* at 25:20-21). In response, Mata asked why he needed to step out and why the officers had pulled him over. (*Id.* at 25: 21-22). Rather than entertain Mata's inquiries, Ison reached into the truck, unbuckled Mata's seatbelt, and reiterated his command to exit the vehicle. (*Id.* at 25:22-23). Mata again asked, "what did I do wrong." (*Id.* at 25:24). This time, however, Ison grabbed Mata and, in short succession, pulled him out and tased him. (*Id.* at 25:24). However, the taser was ineffective—only one of the taser prongs made contact with Mata, so he did not experience an electric shock. (*Id.* at 39:24-40:5). After Ison fired the taser, Mata was pressed against the side of the truck and placed in handcuffs. Once restrained in handcuffs, while still pressed face-first against the truck, an officer punched Mata in the back "about three times." (*Id.* at 32:17-20). Mata states that he never threatened violence or engaged in any behavior indicative of an intent to defend himself or resist arrest. (*Id.* at 38:2-39:2). Nor was he carrying any kind of weapon. (*Id.* at 39:10-11). As the officers placed him in handcuffs, Mata asked why he was being handcuffed. (*Id.* at 33:14-21). The officers responded by telling Mata to "shut [his] mouth" and not worry about it. (*Id.*). Mata accused them of racially profiling him due to his Native American heritage before Joanne instructed Mata to refrain from speaking, which he did. (*Id.*). Because he was facing the truck, Mata was unable to say whether it took more than one officer to place him in handcuffs. (*Id.* at 33:7-9).

3

Ison tells a different story.  He recalls opening the passenger door and stepping back from the vehicle away from Mata.  (Doc. # 25-10 at 9:2-3).  Ison "never laid hands on" Mata in the vehicle and remained roughly four feet away from the passenger door's threshold.  (*Id.* at 11:24-12:3).  During this time, Ison repeatedly asked Mata to step out of the vehicle.  (*Id.* at 8:22).  However, Ison and Mata's interaction was "not going well" and Mata was "verbally cursing" and "being abusive."  (*Id.* at 9:6-9).  "Very suddenly," Mata charged out of the passenger door in a "very, very aggressive manner" with "both fists clenched."  (*Id.* at 9:10-18; 12:11-13).  Ison observed that Mata had large rings on every finger and noted that Mata's body language suggested that he would "rush at either [Ison] or one of the other officers."  (*Id.*).  Ison instructed Mata to place his hands on the side of the vehicle.  (*Id.* at 9:19-20).  Instead, Mata advanced toward Ison.  (*Id.*).  Ison grabbed one of Mata's arms and Assistant Chief Dean Ison grabbed the other.  (*Id.* at 9:19-10:2).  However, Mata "jerked away" from both officers.  (*Id.*).  This led Roy Ison to the conclusion that, for everyone's safety, he needed to deploy his taser.  (*Id.* at 10:3-7).  However, Mata was moving erratically and only one of the taser prongs hit him.  (*Id.* at 10:8-15).  Because Mata remained "verbally active," Roy Ison and Assistant Chief Dean Ison approached him, placed him in handcuffs, and searched him.  (*Id.* at 10:18-21).  At no point did Ison or anyone else strike or punch Mata.  (*Id.* at 24-25).  Subsequently, Mata was placed in the back of a police cruiser and driven to the police station.  (*Id.* at 24:15-19).

Ison also observed that Mata appeared to be drunk.  (*Id.* at 24:11-19).  Upon opening the passenger door, Ison smelled alcohol.  (*Id.* at 8:23-24).  Additionally, Mata's slurred speech and his behavior in the back of the police cruiser led Ison to conclude

that Mata was "obviously…very much so under the influence." (*Id.*). Joanne Williams, in her deposition, stated that Mata had been drinking rum "intermittently throughout the [preceding] night". (Doc. # 25-9 at 17:8-19). Further, Joanne recalled that Mata drank a beer as they drove to his workplace on July 24, although Mata discarded the can before the couple was pulled over. (*Id.* at 65:1-10). Despite his alcohol consumption, Joanne maintained that, at the time they were pulled over, Mata was "maybe a little buzzed" but "not incapacitated" or "unable to make coherent decisions." (*Id.* at 65: 18-24). Mata, for his part, states that, in the entire twenty-four-hour period preceding his arrest, he only consumed two or three beers during a karaoke night at a local bar the night of July 23. (Doc. # 25-8 at 42:12-43:20).

Subsequent to Mata's arrest, Ison prepared a Uniform Citation, which charged Mata with menacing in violation of KRS § 508.050 and resisting arrest in violation of KRS § 520.090. (Doc. # 25-3 at 5). The "charges and post-arrest complaint" section of the citation alleges that Mata exited the vehicle "menacing [Ison] by his actions cursing with a clenched fist." (*Id.*). Further, Ison alleged that, as the "Officers attempted to perform a Terry search, [Mata] resisted officers." (*Id.*).

Mata was booked into the Carter County Justice Center at 1:00 p.m. on July 24, 2023. (Doc. # 25-3 at 4). His bail was set at $2,000.00 and he was released on bond the following morning. (*Id.*). At Mata's arraignment on September 6, 2023, all charges against him were dismissed on a motion by the Carter County attorney Brian Bayes. (*Id.* at 2). In his deposition, Bayes testified that this dismissal occurred due to a miscommunication regarding the nature of the charges. (Deposition of Brian Bayes, Doc. # 25-13 at 27:6-11). Bayes acknowledged that, according to the Uniform Citation,

5

Ison was the alleged victim of the menacing and resisting arrest charges. (*Id.* at 15:1-10). However, Bayes maintained that he did not "have access to the citation" when he appeared at Mata's arraignment on September 6, 2023, so he was unaware of this fact. (*Id.* at 16:22). After speaking with Mata's defense attorney, Bayes mistakenly believed that the arraignment concerned "a domestic issue" between Mata and Joanne Williams. (*Id.* at 10:11-14). According to Bayes, the judge presiding over the arraignment did not advise Mata of the charges against him at any point, nor indicate that the arraignment concerned charges of menacing and resisting arrest. (*Id.* at 18:11-25). Because of this, Bayes's misconceptions about the case were never dispelled.

Because Bayes believed that Joanne was the victim, he conferred with her prior to the arraignment. (*Id.* at 11:22-12:3). Joanne informed him that she wanted the matter dismissed because she and Mata were "playing" and there "was no physical altercation…no abuse…nothing was harmful." (Doc. # 25-9 at 45:8-13). Bayes moved to dismiss the charges and the case was dismissed. (Doc. # 25-3 at 2). Bayes did not become aware of the true nature of the charges against Mata until approximately October of 2024, at which point the statute of limitations had run on the resisting arrest and menacing charges. (Doc. # 25-13 at 42:20-25).

On December 19, 2023, Mata filed this suit against Roy Ison, in his individual capacity, and against the City of Grayson. (*Id.*). The Complaint brings claims against Ison for violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 (Counts I and II) as well as claims for battery (Count IV) and malicious prosecution (Count V) under Kentucky law. (*Id.*). Additionally, Mata brings a claim against the City of Grayson under 42 U.S.C. § 1983 (Count III). (*Id.*). At the conclusion of discovery,

6

Defendants filed the pending Motion, seeking summary judgment on all claims raised in the Complaint. (Doc. # 18).

## II.    STANDARD OF REVIEW

A motion for summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When evaluating a motion for summary judgment, "the evidence is construed and all reasonable inferences are drawn in favor of the nonmoving party." *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (citing *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008)). Reviewing the record at the summary judgment stage, the Court "must not make credibility determinations, weigh the respective value of evidence, or resolve material factual disputes." *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013).

At the outset, the moving party bears "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the movant has satisfied this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must produce evidence showing that a genuine factual issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).

The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III.    ANALYSIS

### A.  Count I – Excessive Force Under 42 U.S.C. § 1983

42 U.S.C. § 1983 states that any "person who, under color of any statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." Thus, to state a claim under § 1983, a plaintiff must show: "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014).

"An excessive-force claim may arise under the Fourth, Eighth, or Fourteenth Amendments depending on 'whether the plaintiff was a free citizen, convicted prisoner, or fit in some gray area in between the two.'" *Kulpa v. Cantea*, 708 F. App'x. 846, 851 (6th Cir. 2017) (quoting *Burgess*, 735 F.3d at 472). In this case, Mata asserts that his Fourth Amendment rights were violated by Ison when he used excessive force to subdue Mata during the course of his arrest. (Doc. #1 ¶ 25). The parties do not dispute that Ison acted under color of state law. Thus, to succeed on his § 1983 claim, Mata must

8

show that Ison violated his Fourth Amendment rights.  *See Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 (6th Cir. 2023).

The Sixth Circuit has explained that "[a]n officer making an investigative stop or arrest has 'the right to use some degree of physical coercion or threat thereof to effect it.'"  *Miller v. Sanilac Cnty.*, 606 F.3d 240, 251 (6th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 395-96 (1989)).  However, when an officer uses physical coercion, his actions must be reasonable.  *See Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 427 (2017) ("[R]easonableness is always the touchstone of Fourth Amendment analysis." (quoting *Birchfield v. North Dakota*, 579 U.S. 438, 477 (2016))).  "The use of excessive force during an arrest is unreasonable and violates the Fourth Amendment."  *LaPlante v. City of Battle Creek*, 30 F.4th 572, 579 (6th Cir. 2022).

Courts analyze Fourth Amendment excessive force claims under an objective reasonableness standard.  *Graham*, 490 U.S. at 395.  Determining whether an officer used excessive force to effectuate a particular seizure requires the Court to balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against countervailing governmental interests.  *Id*. at 396 (citations omitted).  "Because the test of reasonableness is not capable of precise definition or mechanical application, . . . its proper application requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id*. (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).  While these three factors do not prescribe an exhaustive list of relevant considerations, they guide the Court's analysis.  *Wright v. City*

*of Euclid*, 962 F.3d 852, 865 (6th Cir. 2020). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97. As the moving party, Ison is entitled to summary judgment if, after balancing these factors and viewing the record in the light most favorable to Mata, a reasonable jury could not conclude that Ison used excessive force.

Ison argues that he is entitled to qualified immunity from Mata's § 1983 claims. (Doc. # 18-1 at 33). The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). An official sued under § 1983 is entitled to qualified immunity unless that official (1) violated a statutory or constitutional right, and (2) that right was "clearly established" at the time of the challenged conduct. *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). A constitutional right is not clearly established "unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* (citing *al-Kidd*, 563 U.S. at 741). "As a matter of public policy, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 335 (1986).

Mata alleges two separate instances in which Ison used excessive force against him: (1) Ison's removal of Mata from the vehicle and immediate deployment of the taser

and (2) the two to three strikes to the back Mata received while handcuffed.  The Court will address each episode in turn.  *Wright*, 962 F.3d at 865 (holding that where a plaintiff alleges multiple instances of excessive force, "the court must segment the incident into its constituent parts and consider the officer's entitlement to qualified immunity at each step along the way").

### 1. Removal From the Vehicle and Tasing

### a. Violation of a Constitutional Right

In his deposition, Mata testified that Ison used both hands to forcefully pull him out of the vehicle by his wrist.  (Doc. # 25-8 at 31:11-23).  Immediately after he was removed from the vehicle, Mata states that he was tased.  (*Id.* at 36:9-10 ("When he pulled me out of the truck, he [t]ased me.")).  The Court will first determine whether Ison's actions violated Mata's Fourth Amendment rights by subjecting him to excessive force. Considering the significant factual disputes in the record and viewing the evidence in a light most favorable to Mata, the Court finds that a reasonable jury could determine that Ison violated Mata's Fourth Amendment rights by removing him from the vehicle and tasing him.

First, the severity of the crime at issue weighs in Ison's favor.  Courts in the Sixth Circuit regularly deem domestic violence a serious offense.  *E.g., Franke v. Janes*, No. 3:23-cv-119-RGJ-RSE, 2025 WL 269179, at *4 (E.D. Ky. Jan. 22, 2025); *Spradlin v. Primm*, 581 F. Supp. 3d 837, 844 (E.D. Ky. 2022); *Mallin v. City of Eastlake*, 755 F. Supp. 2d 819, 836 (N.D. Ohio 2010).  Upon approaching Mata at the passenger side of the vehicle, Ison was responding to a domestic violence complaint.  (Doc. # 25-10 at 7:18-19).  Assistant Chief Dean Ison received a call from Brenda Williams, an employee of

the Department of Social Services, alerting him to an instance of domestic violence. (*Id.* at 15:8-11; Doc. # 18-2 at 2). Williams informed Dean Ison that, in the vehicle directly in front of her in traffic, she observed a man "punching [a] lady in her right cheek/neck area...4 times."[3] (Doc. # 18-2 at 1). Dean Ison then relayed this information to Roy Ison and dispatched him to the scene. (Doc. # 25-10 at 15:9-11). Given these facts, Ison reasonably suspected Mata of domestic violence against Joanne Williams.

The second *Graham* factor directs courts to consider "whether the suspect pose[d] an immediate threat to the safety of the officers or others." *Graham*, 490 U.S. at 396; *see also Roell v. Hamilton Cnty.*, 870 F.3d 471, 481 (6th Cir. 2017). On Ison's version of the arrest, Mata was belligerent upon Ison's approaching the vehicle. (Doc. # 25-10 at 8:8-9). Ison states that he smelled alcohol when he opened the vehicle's door and backed away from Mata because he could tell that "things were...not going well." (*Id.* at 8:23-9:5). Despite Ison's repeated commands to "step out," Ison testifies that Mata remained in the vehicle before rushing out of the passenger door "very suddenly." (*Id.* at 9:10). It is worth noting that, in his deposition, Ison stated that Mata exited the vehicle of his own accord and that no police officer used physical force to remove him. (*Id.*). Further, Ison states that, after Mata exited the vehicle, he "noticed he had rings across all fingers, appeared to be every finger, large rings" that could be used as a weapon akin to brass knuckles. (*Id.* at 9:14-15).

Mata and Joanne Williams tell a different story. Mata asserts that Ison approached his side of the vehicle, opened the passenger door, and asked him to step

---

[3]    Although Mata and Joanne Williams dispute this description of events and maintain that they were merely "playing," (Doc. # 25-9 at 25:10; Doc. # 25-8 at 21:25) the proper inquiry is whether the force employed was excessive given Ison's reasonable perception of the situation in light of the facts available to him at the time. *Graham*, 490 U.S. at 397.

out.  (Doc. # 25-8 at 25:20-21).  Mata claims that he calmly asked what he did wrong and, in response, Ison unbuckled Mata's seatbelt and reiterated his command to step out.[4] (*Id.* at 25:22-23).  When Mata again asked what he did wrong, Ison allegedly "pulled [Mata] out, he tased [Mata], and handcuffed [Mata]."  (*Id.* at 25:24-25).  Mata unequivocally asserts that he was tased as he was pulled out.  (*Id.* at 37:14-17 (Q: "As you sit here right now, you were pulled from your vehicle by one officer, and as you were pulled out, you were Tased.  Is that your testimony?" A: "That's correct.")).  Joanne Williams recalls that Ison asked Mata to step out only once before "three or four [officers], pulled him forcibly out of the vehicle."  (Doc. # 25-9:7-8).

Considering the chasm between the facts as recalled by Mata and Williams on one hand and Ison on the other, and without the aid of any video evidence, the Court concludes that a reasonable jury could find that Mata did not pose an immediate threat to the safety of those around him.  Although "heavy intoxication may, on its own, render it reasonable to handcuff an individual, the reasonableness of the force used to effectuate the seizure…will generally depend upon other circumstances, such as the individual's resistance and hostility."  *Stanfield v. City of Lima*, 727 F. App'x. 841, 847 (6th Cir. 2018).  Although Ison claims he smelled alcohol and observed Mata loudly cursing and verbally abusing the officers gathered, Mata maintains that he had consumed just two or three beers the night before and had not been drinking the day of the incident.  (Doc. # 25-8 at 43:20).  Similarly, Joanne Williams testified that Mata "might have been a little buzzed," but that he was able to make coherent decisions.  (Doc. # 25-

---

[4]    Later in his deposition, Mata asserted that Ison made only one request that he exit the vehicle before applying force.  (Doc. # 25-8 at 30: 24-25:1) (Q: "How many times did [Ison] ask you to get out of the truck?" A: "One time.").  However, when providing a narrative response, Mata seemed to indicate that Ison twice commanded him to exit the vehicle.

9 at 65:18-22).  Mata also testified that he did not exhibit hostile or aggressive behavior or otherwise indicate that he intended to resist the officers gathered at the scene.  (Doc. # 25-8 at 38:2-6; 38:13-39:2).  Thus, the second *Graham* factor weighs in Mata's favor.

Finally, the third *Graham* factor asks whether the plaintiff was "actively resisting arrest."  *Roell*, 870 F.3d at 482.  Active resistance entails "noncompliance" paired with "some outward manifestation" of "volitional and conscious defiance."  *Kent v. Oakland Cnty.*, 810 F.3d 384, 392 (6th Cir. 2017) (quoting *Eldridge v. City of Warren*, 533 F. App'x 529, 534 (6th Cir. 2013)).  This defiance can take the form of "physical force, a show of force, or verbal hostility."  *King v. City of Rockford*, 97 F.4th 379, 395 (6th Cir. 2024) (quoting *Jackson v. Washtenaw Cnty.*, 678 F. App'x 302, 306 (6th Cir. 2017)).  Vulgar language that is not "overtly threatening" does not constitute the kind of verbal hostility required to justify force.  *See Shumate v. City of Adrian*, 44 F.4th 427, 448 (6th Cir. 2022).  Further, mere noncompliance does not rise to the level of active resistance.  *Id.* at 446.

When it comes to Mata's resistance, practically the only undisputed fact in the record is that he did not immediately comply with Ison's initial order to step out of the vehicle.  However, in the Sixth Circuit, "failure to exit a vehicle is not active resistance and does not justify the use of a taser."  *Browning v. Edmondson Cnty.*, 18 F.4th 516, 527 (6th Cir. 2021).  Additionally, factual disputes obscure the degree of Mata's noncompliance, his hostility, and the language he directed toward Ison and the other officers.  Viewing the facts in a light most favorable to Mata, a reasonable jury could find that Ison used excessive force in removing Mata from the vehicle and tasing him.  Accordingly, the final *Graham* factor tips in Mata's direction.

### b.  Clearly Established Right

Having found that the record evidence allows a reasonable jury to conclude that Ison violated Mata's Fourth Amendment rights, the Court must now decide whether this conduct violated a right that was "clearly established at the time of the alleged violation." *Campbell v. City of Springboro*, 700 F.3d 779, 786 (6th Cir. 2012).  A constitutional right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The Supreme Court has cautioned courts "not to define clearly established law at a high level of generality."  *al-Kidd*, 563 U.S. at 742.  "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the] rule was firmly established.'"  *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Plumhoff*, 572 U.S. at 779).  While the plaintiff "need not identify 'a case directly on point,'" "'existing precedent must have placed the statutory or constitutional question beyond debate.'"  *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1009 (6th Cir. 2024) (quoting *al-Kidd*, 563 U.S. at 741) (citation omitted)).

The Sixth Circuit has held that "[b]y 2019 . . . the right to be free from physical force when one is not actively resisting the police was clearly established."  *Shumate*, 44 F.4th at 427 (citing *Kijowski v. City of Niles*, 372 F. App'x. 595, 601 (6th Cir. 2010); *Griffin v. Coburn*, 473 F.3d 650, 659-60 (6th Cir. 2007)).  Specifically, "by 2020. . . 'it was clearly established in this circuit that an individual has a constitutional right not to be tased when he or she is not actively resisting.'"  *Saalim*, 97 F.4th at 1009 (quoting *Browning*, 18 F.4th at 450)); *see also Wright*, 962 F.3d at 868-69 (holding that "an officer may not tase a citizen not under arrest merely for failure to follow the officer's orders when the officer

has no reasonable fear for his or her safety").  On Mata's version of the facts, he did not actively resist arrest, engage in verbal hostilities, or physically struggle with Ison or the other officers.  Because the Court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment," it must accept Mata's account.  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).  Under these facts Mata had a right to be free from tasing and physical force that was clearly established at the time of the incident.  Accordingly, Ison is not entitled to qualified immunity.

### 2.  Blows to the Back While Handcuffed

### a.  Constitutional Violation

In addition to being forcibly removed from the vehicle and tased, Mata alleges that he was struck in the back multiple times after the officers placed him in handcuffs.  (Doc. # 25-8 at 29:20-23) ("They unfastened my seat belt and then pulled me out of the truck, and then Tased me, and then handcuffed me, and then punched me a couple of times in the back while I was handcuffed.").[5]  Once again, the Court will first determine whether, resolving all factual disputes in Mata's favor, a reasonable jury could find that Ison violated Mata's Fourth Amendment rights.

Mata alleges that immediately after Ison pulled him out of the vehicle and tased him, a group of officers "threw [him] against the truck," "handcuffed [him]," and "punched [him] . . .about three times in the back."  (Doc. # 25-8 at 32:17-18).  As Ison notes in his Motion, because these alleged strikes took place so soon after Mata was removed from the vehicle and tased, the *Graham* analysis is similar for both episodes.  (Doc. # 18 at

---

[5]    In his deposition, Ison testified that "no one" struck or punched Mata at any point during the incident.  (Doc. # 25-10 at 10:24).  Further, Grayson Police Chief Tony Cantrell also testified in his deposition that no police officer struck or punched Mata.  (Doc. # 25-11 at 31:16-18).

32). First, the severity of the crime—domestic violence—continues to weigh in Ison's favor. Likewise, the threat Mata posed to Joanne Williams and the arresting officers weighs strongly in Mata's favor. Whatever threat he posed earlier in the encounter, Mata posed far less of a threat once the officers had pressed him against the vehicle and placed him in handcuffs. Finally, Ison argues that "at the time of the *alleged* back strikes, the responding officers believed the taser was ineffective, and because the incident happened so quickly, there was not enough time between the taser deployment, handcuffing, and back strikes to determine that Mata was no longer resisting and subdued." (*Id.*). However, Mata testified in his deposition that he did not physically resist the arrest at any point. (Doc. # 25-8 at 32:11-13). Accepting Mata's version of the facts, as the Court must at this juncture, Mata was not actively resisting arrest when he was struck in the back while handcuffed.

Upon consideration of the totality of the circumstances and the application of the three *Graham* factors, the alleged blows to Mata's back, if proven, were unreasonable. The Sixth Circuit has held that, where an arrestee "poses no threat to others and is not trying to escape," a "spontaneous assault" or an "'unprovoked and unnecessary blow,'" violates the Fourth Amendment. *Coley v. Lucas Cnty.*, 799 F.3d 530, 539 (6th Cir. 2015) (quoting *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988)). Specifically, "it is clearly established in this circuit that 'the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional.'" *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009) (quoting *Bultema v. Benzie Cnty.*, 146 F. App'x. 28, 35 (6th Cir. 2005)); *see also Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x. 509, 513 (6th Cir. 2006) (affirming denial of qualified immunity at summary judgment

where a police officer slapped a handcuffed arrestee who was not actively resisting). Taking the evidence in the light most favorable to Mata, a reasonable jury could conclude that Ison violated Mata's Fourth Amendment rights by repeatedly striking him in the back while he was in handcuffs and was not actively resisting arrest.[6]

### b. Clearly Established Right

Having determined that a genuine dispute exists as to whether Ison violated Mata's Fourth Amendment rights, the Court must again determine whether Ison violated a clearly established right. At the time of the incident, arrestees had a clearly established right not to be gratuitously assaulted while restrained and subdued. *Coley*, 799 F.3d at 540; *Phelps v. Coy*, 286 F.3d 295, 301-02 (6th Cir. 2002); *McDowell*, 868 F.2d at 1307 (finding excessive force where officer hit a handcuffed and non-resistant plaintiff with a

---

[6]    Defendants argue that, setting the constitutionality of the alleged back strikes aside, Ison is entitled to summary judgment because Mata "does not know who struck him." (Doc. # 18 at 31). Indeed, in his deposition, Mata confirmed that, because he was pressed against the vehicle with the officers behind him, he cannot say who delivered the blows. (Doc. # 25-8 at 33:1-3 ("So honestly, I can't tell you who punched me, but I got punched in the back when I had my handcuffs on.")). However, Mata's inability to specifically identify Ison as the officer who punched him does not doom his § 1983 claim at the summary judgment stage.

The Sixth Circuit has "consistently held that 'where a plaintiff who was unable to identify clearly which officers committed specific acts during the incident produces evidence that places an individual defendant in a small group of officers that committed allegedly unconstitutional acts within each other's presence, the plaintiff's claim against that defendant may survive summary judgment.'" *Batson v. Hoover*, 788 F. App'x. 1017, 1020 (6th Cir. 2019) (quoting *Fazica v. Jordan*, 926 F.3d 283, 290-92 (6th Cir. 2019)). Furthermore, "[an] officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and means to prevent the harm from occurring." *Turner v.* Scott, 119 F.3d 425, 429 (6th Cir. 1997).

Here, Mata has introduced evidence that clearly places Ison within the small group of officers who were present for his arrest. (*See, e.g.,* Doc. # 25-7 (use of force report naming Ison as the officer who deployed the taser); Doc. # 25-10 at 10:16-23 (Ison's deposition testimony that he was present when Mata was placed in handcuffs); Doc. # 25-8 at 25:6-10 (Mata's deposition testimony that "three or four officers" were on the scene during his arrest)). Even if another officer actually placed Mata in handcuffs and struck him on the back, a jury could still find Ison liable for failure to intervene. Accordingly, viewing the facts in the light most favorable to Mata, a genuine dispute of material fact exists as to whether Ison used excessive force or observed a colleague use excessive force and failed to intervene.

nightstick); *Bultema*, 146 F. App'x. at 37 ("[W]e have also held for more than twenty years that it is clearly established in this circuit that a 'totally gratuitous blow' to a suspect who is handcuffed and offering no resistance violates the Fourth Amendment." (quoting *McDowell*, 863 F.2d at 1307)).

At the time of the incident, Mata had a clearly established right to be free from gratuitous physical force when he was handcuffed and not actively resisting arrest. Because, on Mata's version of the facts, he was not actively resisting arrest and was handcuffed when he was punched, Ison is not entitled to qualified immunity at this stage.

### B.  Count II – Malicious Prosecution Under 42 U.S.C. § 1983

Defendant Ison also moves for summary judgment on Count II of Mata's Complaint.  (Doc. # 18-1 at 36).  Count II seeks redress for "Violation of the Fourth and Fourteenth Amendments to the United States of America [sic]."  (Doc. # 1 at ¶¶ 27-30).[7] Specifically, Mata alleges that Ison "charged Mata with fraudulent crimes for which he had no probable cause," (*Id.* at ¶ 28), that "the charges were dismissed without probable cause and the case has completely resolved in Mata's favor," (*Id.* at ¶ 29), and that Mata incurred attorney's fees and suffered a loss of employment as a result (*Id.* at ¶ 30).  Ison's Motion for Summary Judgment argues that, because Ison's "arrest of Mata was supported by probable cause . . . Mata's claims for unlawful arrest in violation of the Fourth and Fourteenth Amendments must be dismissed, with prejudice."  (Doc. # 18-1 at 36).

---

[7]    Although Mata asserts this claim under the Fourth and Fourteenth Amendments, Sixth Circuit precedent dictates that claims for malicious prosecution "are based on the Fourth Amendment."  *Howse v. Hodous*, 953 F.3d 402, 408 (6th Cir. 2020).  Accordingly, the Court will evaluate Mata's claim for malicious prosecution pursuant to the Fourth Amendment.

Upon review of the parties' briefing, the Court observes some confusion as to whether the Complaint alleges a claim for unlawful arrest in violation of the Fourth Amendment or a claim for malicious prosecution in violation of the same. Ison's Motion for Summary Judgment (Doc. # 18-1 at 36-44) offers law and argument pertaining solely to a claim for unlawful arrest. On the other hand, Mata's Response (Doc. # 25 at 19-24) argues that Ison is liable for "False Arrest and Malicious Prosecution under the Fourth Amendment." (*Id.* at 19-24). In his Response (*id.*), Mata addresses *both* malicious prosecution and unlawful arrest. (*Id.* at 19). Ison's Reply, however, does not address malicious prosecution but, again, argues that "Mata's claims for unlawful arrest in violation of the Fourth and Fourteenth Amendments (Count II) must be dismissed, with prejudice." (Doc. # 27 at 7). However, the Complaint (Doc. # 1) clearly sets forth allegations that indicate a claim for malicious prosecution. The Complaint alleges that "Ison charged Mata with fraudulent crimes for which he had no probable cause," and that "[t]he charges were dismissed . . . and the case has completely resolved in Mata's favor." (Doc. # 1 at ¶¶ 28-29). Count II does not refer to a "false" or "unlawful" arrest and contains no specific allegations regarding Mata's arrest. (*Id.* at ¶¶ 28-30). Accordingly, the Court construes Count II as making a claim for malicious prosecution in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983.

Ison arrested and charged Mata with menacing in violation of KRS § 508.050 and resisting arrest in violation of KRS § 520.090. (Doc. # 25-3 at 5). These charges relate to Mata's alleged actions during his encounter with Ison. (*Id.*; *see also* Doc. # 25-13 at 25:9-17 (Deposition of Brian Bayes)). The "Charges and Post-Arrest Complaint" section of the Uniform Citation prepared by Ison states that Mata "exited the vehicle then exited

menacing [Ison] by his actions cursing with a clenched fist."  (*Id.*).  Further, the Citation states that Mata "resisted officers and was [sic] (Tazer [sic] failed)."  (*Id.*).  Mata was booked at 1 p.m. on July 24, 2023, and released on bond the following morning.  (Doc. # 25-3 at 4).  At Mata's arraignment on September 6, 2023, these charges were dismissed on a motion of the county attorney, Brian Bayes "at request of [the] complaining witness."  (*Id.* at 2).  However, despite the fact that Roy Ison is listed as the complaining witness on the Carter County District Court docket, Bayes mistakenly believed Mata's arraignment involved his alleged domestic abuse of Joanne Williams.  (Doc. # 25-13 at 16:20-17:1).  Immediately prior to the arraignment, Bayes spoke to Joanne Williams, who informed him that the alleged domestic abuse did not occur and that she wanted the charges dismissed.  (*Id.* at 27:24-28:4).  Bayes, wrongly believing that Joanne Williams was the victim and complaining witness in the matter, moved to dismiss the charges.  (*Id.*).

Ison asserts that because he "had probable cause to arrest Mata, he is entitled to qualified immunity on Mata's Fourth and Fourteenth Amendment unlawful arrest claim." (Doc. # 18-1 at 44).  However, as discussed above, the allegations in Count II make a § 1983 claim for malicious prosecution—not unlawful arrest.  (Doc. # 1 at ¶¶ 27-30). Therefore, there is potential ambiguity as to whether Ison has raised the qualified immunity defense with respect to Mata's malicious prosecution claim.  Elsewhere in his Motion, however, Ison contends broadly that he is "entitled to qualified immunity with respect to Mata's § 1983 claims against him."  (Doc. # 18-1 at 2).  This broad invocation of qualified immunity extends to Mata's malicious prosecution claim.  Thus, the Court concludes that Ison has raised the defense of qualified immunity in relation to Mata's

claim for malicious prosecution laid out in Count II of the Complaint. *See Doe ex rel. Pahssen v. Merrill Community School Dist.*, 610 F. Supp. 2d 789, 812 (E.D. Mich. 2009), *aff'd*, 668 F.3d 356 (6th Cir. 2012).

As discussed above, Ison is entitled to qualified immunity unless his actions (1) violated a statutory or constitutional right that (2) was "clearly established" at the time he arrested and charged Mata with the offenses at issue here. *Plumhoff*, 572 U.S. at 778 (citing *al-Kidd*, 563 U.S. at 735).

### 1. Constitutional Violation

"The Sixth Circuit 'recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006)). "The 'tort of malicious prosecution' is 'entirely distinct' from that of false arrest, as the malicious prosecution tort 'remedies detention accompanied not by absence of legal process, but by *wrongful institution* of legal process.'" *Id.* (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007)). A claim for malicious prosecution pursuant to § 1983 arises when (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff, (2) there was a lack of probable cause for the criminal prosecution, (3) the plaintiff suffered a deprivation of liberty—apart from his initial seizure—as a consequence of the legal proceeding, and (4) the criminal proceeding was ultimately resolved in the plaintiff's favor. *Id.* at 308-09. Further, and somewhat ironically, a plaintiff need not "show that the officers influenced or participated with malice" to succeed on a malicious prosecution claim under the Fourth Amendment. *Wright*, 962 F.3d at 876.

In his Motion for Summary Judgment, Ison only challenges the existence of facts establishing the second element—probable cause to support Mata's prosecution. (Doc. # 18-1 at 37 (arguing that Ison is "entitled to summary judgment [on Count II of the Complaint (Doc. # 1)] because he had probable cause to arrest Mata for fourth-degree assault, KRS § 508.030(1)(a), public intoxication, KRS § 222.202, menacing, KRS § 508.050(1), and/or resisting arrest, KRS § 508.090). Accordingly, the Court must determine whether a reasonable jury could find a lack of probable cause for the charges levied against Mata. Viewing the evidence in the light most favorable to Mata, a reasonable juror could find that Ison lacked probable cause to charge Mata with menacing and resisting arrest in relation to Mata's actions during the encounter.

To state a claim for malicious prosecution a plaintiff must show, at minimum, "that there was a lack of probable cause for the criminal prosecution." *Sykes*, 625 F.3d at 308. Specifically, a plaintiff must show "'a lack of probable cause for the challenged charge or charges in the indictment.'" *Howell v. McCormick*, 148 F.4th 834, 853 (6th Cir. 2025) (quoting *Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021). "Probable cause exists when there are enough 'facts and circumstances' to make a reasonable person believe that 'the accused was guilty of the crime charged.'" *Howse*, 953 F.3d at 409 (quoting *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015)); *see also Harrod v. Lee*, No. 24-5228, 2024 WL 5103834, at *5 (6th Cir. Dec. 13, 2024) ("Probable cause exists where a 'prudent man' in the officer's position would believe the suspect 'had committed or was committing an offense.'" (quoting *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015))). Ison argues that, so long as he had probable cause to arrest Mata for *any* criminal offense, "Mata's claims for unlawful arrest in violation of the Fourth and

23

Fourteenth Amendments (Count II) must be dismissed, with prejudice." (Doc. # 28 at 7). Indeed, "the constitutional tort claim of false arrest fails so long as there's just one valid reason for the arrest." *Howse*, 953 F.3d at 409.

However, this rule does not apply to malicious prosecution claims under § 1983. *Sykes*, 625 F.3d at 310-11 (holding that courts "must consider not only whether the Defendant[] had probable cause to arrest the Plaintiff[] *but also whether probable cause existed to initiate the criminal proceeding against the Plaintiff[]*") (emphasis added). Previously, Sixth Circuit precedent held that, so long as there was probable cause to prosecute a plaintiff on any one of the charged crimes, a malicious prosecution claim would fail. *See, e.g., Howse*, 953 F.3d at 409; *Rasawehr v. Grey*, No. 24-3322, 2025 WL 1639164, at *4 (6th Cir. Jun. 10, 2025) ("This court previously held that when an official brings multiple charges against a defendant, only one of which is supported by probable cause, the valid charge insulates the official from a claim of malicious prosecution related to the other charges."). The Supreme Court rejected this rule in *Chiaverini v. City of Napoleon*, holding that "the bringing of one valid charge in a criminal proceeding" does not preclude a malicious prosecution claim based on the Fourth Amendment. 602 U.S. 556, 563 (2024). Rather, courts must evaluate such suits "charge by charge." *Id.* at 562. Under either rule, a malicious prosecution claim under § 1983 may proceed where an officer lacked probable cause for each of the charges. Because the Uniform Citation issued by Ison charged Mata with menacing and resisting arrest, Mata's malicious prosecution claim may proceed if Ison lacked probable cause for either of the two charges.

24

Under Kentucky law, "[a] person is guilty of menacing when he intentionally places another person in reasonable apprehension of imminent physical injury." KRS § 508.050(1). Menacing ordinarily "involves 'antagonistic behavior focused at another person,' and some of the hallmarks include moving closer, using a raised voice or threatening tone, and making physical contact or gestures." *McNally v. Tabor*, No. 6:18-cv-16-REW-HAI, 2019 WL 6044882, at *9 (E.D. Ky. Nov. 15, 2019) (quoting *Martin v. Coyt*, No. 1:10-cv-176-R, 2012 WL 1574823, at *10 (W.D. Ky. May 3, 2012)). The "Charges and Post-Arrest Complaint" section of the Uniform Citation prepared by Ison states that Mata "refused then exited the vehicle then exited menacing officer by his actions cursing with a clenched fist." (Doc. # 25-3). However, according to Mata, he was asked once or twice[8] to exit the vehicle before Ison forcibly pulled him from the truck and deployed the taser. (Doc. # 25-8 at 30:19-31:6). Further, at his deposition, Mata stated that he did not physically resist in any manner as he was removed from the vehicle. (*Id.* at 37:23-39:1). Nor did Mata take any actions that would indicate an intent to "defend [himself] or that [he was] upset with the fact that [he was] being removed from the truck". (*Id.* at 38:2-6). Indeed, Mata maintains that he was neither verbally nor physically aggressive at any point during his arrest. (*Id.* at 33:14-21). Adopting Mata's version of events, the Court concludes that a reasonable jury could find that a "prudent man" in Ison's position would not believe that Mata had menaced him. *See Wesley*, 779 F.3d at 429.

Likewise, under Kentucky law:

1) A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a peace officer, recognized to be acting under color

---

[8]    *See supra* n. 3.

of his official authority, from effecting an arrest of the actor or another by:

    a) Using or threatening to use physical force or violence against the peace officer or another; or

    b) Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

KRS § 520.090.  Further, the Commentary to this statute provides that the offense "includes only forcible resistance and excludes other forms of nonsubmission to authority. . .. Criminal sanctions are, therefore, needed only when interference with arrest poses a direct threat to the safety of the officer[.]" Id.  Mere noncompliance does not constitute resisting arrest in the absence of physical force, the threat of force, or the creation of a substantial risk of injury.  *See Arnold v. Wilder*, 657 F.3d 353, 365 (6th Cir. 2011) (holding that a plaintiff did not violate KRS § 520.090 when she "spoke with [the officer] calmly" and "pulled away or pulled back when [the officer] attempted to take her into custody." (quotation omitted)).  Looking at the facts in the light most favorable to Mata, his resistance never extended beyond an initial hesitancy to exit the vehicle.  Mata testified at his deposition that, upon Ison's demand that Mata exit the passenger seat, Mata inquired "[f]or what? what'd I do wrong?"  (Doc. # 25-8 at 25:20-25).  Ison reached across, unbuckled Mata's seatbelt and again instructed Mata to get out.  (*Id.*).  Mata again asked "[w]hat did I do wrong?" at which point he was removed from the car, tased, and handcuffed in short order.  (*Id.*).

Because, under Mata's version of the facts, Ison did not have probable cause to charge him with resisting arrest in violation of KRS § 520.090, a factual dispute exists that must be submitted to a jury.  *See Alman*, 703 F.3d at 896 ("'Given then, that probable cause is a legal question, but that underlying factual disputes related to probable cause

must be submitted to a jury, our inquiry on review must be whether sufficient facts are in dispute with respect to probable cause to require fact-finding by a jury here.'" (quoting *Hale v. Kart*, 396 F.3d 721, 729 (6th Cir. 2005))).

## 2. Clearly Established Right

Having concluded that a reasonable jury could find that Ison violated Mata's Fourth Amendment right to be free from malicious prosecution, the Court must determine whether Ison's conduct violated a right that was clearly established.

"A police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment 'only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause.'" *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) (quoting *Newman v. Township of Hamburg*, 773 F.3d 769 (6th Cir. 2014); *see also Jones v. Clark Cnty.*, 959 F.3d 748, 767 (6th Cir. 2020), *overruled on other grounds by Thompson v. Clark*, 959 F.3d 748, 766 (6th Cir. 2020) (holding that the right to be free of malicious prosecution "applies in cases where the officer has falsified statements or withheld evidence and facilitated the continued detention of a plaintiff without probable cause")). At the time of Mata's arrest in 2023, it was "well established that police officers may be held liable for malicious prosecution when they knowingly include false statements in their investigative materials, where those materials influence the ultimate decision to prosecute the plaintiff." *Jones v. City of Elyria*, 947 F.3d 905, 920 (6th Cir. 2020) (citing *Sykes*, 625 F.3d at 314; *Jackson v. City of Cleveland*, 925 F.3d 793, 820-21 (6th Cir. 2019)).

Under Mata's version of the facts, Ison knowingly included false information in the Uniform Citation, including that Mata "exited [the vehicle] menacing [Ison] by his actions

27

cursing with a clenched fist" and that Mata resisted the officers' attempts to arrest him. (Doc. # 25-3 at 5). A reasonable officer in Ison's position would have known that he was violating Mata's Fourth Amendment rights when he knowingly included false statements in a Uniform Citation that charged Mata with crimes unsupported by probable cause.[9] Therefore, Ison is not entitled to qualified immunity with respect to Mata's malicious prosecution claim. Accordingly, Ison is not entitled to summary judgment on this claim.

### C. Count III – Municipal Liability Under 42 U.S.C. § 1983

As discussed above, § 1983 actions may be brought against a "person who…causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In *Monell v. Department of Social Services of City of New York*, the Supreme Court held that municipalities and other local government units are "persons" under § 1983. 436 U.S. 658, 690 (1978) ("Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies."). However, § 1983 liability attaches to municipalities "only under a narrow set of circumstances." *Wright*, 962 F.3d at 879.

---

[9]    Mata's arrest and the initiation of criminal proceedings against him took place shortly before the Supreme Court's decision in *Chiaverini*. Accordingly, the Sixth Circuit's now-discarded rule barring malicious prosecution suits where at least one of the charges against a plaintiff was supported by probable cause provides the "clearly established law" for qualified immunity purposes. *See Rasawehr*, 2025 WL 1639164, at *5 ("Under then-existing precedent, the individual officers did not violate clearly established law because at least one of the charges was supported by probable cause."). However, because the Court concludes that, under Mata's version of the facts, Ison did not have probable cause to charge him with *either* menacing or resisting arrest, Ison's conduct would violate the *Chiaverini* standard as well as the Sixth Circuit's former rule.

"A municipality may not be held liable under § 1983 on a *respondeat superior* theory—in other words, '*solely* because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691). Rather, liability attaches to a municipality only "when execution of a government's policy or custom…inflicts the injury." *Monell*, 436 U.S. at 694. To show such a policy or custom, a plaintiff must demonstrate "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478.

Here, Mata advances his claim pursuant to "failure to train or supervise" and "policy of inaction" theories. (Doc. # 25 at 25). The Court will address each theory in turn.

## 1. Failure to Train or Supervise

A "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The Supreme Court has explained that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Thus, to succeed on a failure to train theory, a plaintiff must show that (1) the training program at issue was inadequate, (2) that this inadequacy was the result of deliberate indifference on the municipality's part, and (3) that the inadequacy was "closely related to" or "actually caused the. . . injury." *Russo v.*

29

*City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992) (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)). A plaintiff can demonstrate that a municipality's failure to train amounts to deliberate indifference by showing "(1) a 'pattern of similar constitutional violations by untrained employees' or (2) 'a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation.'" *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 323 (6th Cir. 2023) (quoting *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738-39 (6th Cir. 2015)). Because the City has shown "that there is an absence of evidence to support [Mata's] case," it has carried its initial burden. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court finds that Mata fails to carry his reciprocal burden to establish a genuine dispute of material fact regarding his failure to train theory.

Mata's Complaint alleges that the City "was deliberately indifferent" to its responsibility to "train and supervise officers." (Doc. # 1 ¶¶ 31-32). However, in his Response, Mata fails to clearly identify any evidence indicating that Ison or any members of the Grayson Police Department received inadequate training. (*See* Doc. # 25 at 24-25). In its Motion for Summary Judgment, the City observes that "Mata has not identified a general type of training that City of Grayson should have provided to its police officers." (Doc. # 18 at 16). Nor has Mata pointed to a "particular training deficiency" or "identified a need for further or different training." (*Id.*). On the contrary, the City meticulously cites record evidence showing that Ison participated in thousands of hours of training, including forty hours annually, much of which related directly to the use of force. From December of 1994 to March 28, 2022, Ison completed at least 1,566 hours

of training. (Doc. # 18-6 at 3). Importantly, Ison successfully completed training related specifically to the use of tasers. (Doc. # 18-9 at 1). Additionally, in April of 2022 Ison completed the MILO Firearms Simulator Training course offered by the Kentucky Association of Counties. (Doc. # 18-11 at 3). This course included a review of Kentucky law related to the use of physical force by law enforcement. (*Id*. at 4).

Mata's Response fails to offer any rebuttal evidence suggesting that the City's training program was inadequate. (Doc. # 25 at 25). Once the City identified the absence of evidence for the proposition that its training regime was inadequate, Mata was tasked with offering sufficient evidence to create a genuine issue of material fact concerning the training's adequacy. *See Russo*, 953 F.2d at 1046-47 (finding that the plaintiffs satisfied their reciprocal burden by offering expert testimony suggesting that the City of Cincinnati's training program was inadequate with respect to the use of force on mentally disturbed persons). By failing to identify any countervailing evidence suggesting the City's training regime is inadequate, Mata fails to raise a genuine issue as to the training's adequacy. *See Brown v. City of Wyoming*, No. 23-1285, 2024 WL 5040781 (6th Cir. Dec. 9, 2024) (defendant city entitled to summary judgment where it provided documentation of involved officers' training and plaintiff failed to provide evidence that such training was inadequate).

In *Wright v. City of Euclid*, the Sixth Circuit reversed a district court's grant of summary judgment on a failure to train claim where the plaintiff offered evidence that the city's training regime consisted of "simply reading the use-of-force policy to the officers at roll call until it is believed that all the officers have heard it" and "followed up with a one-or-two page quiz that may or may not be given to officers." 962 F.3d 852, 881 (6th

Cir. 2020).  This differs markedly from the present case.  Here, the City offered evidence that Ison went through significant training concerning the use of force generally and the use of tasers specifically.  (Docs. # 18-8 and # 18-11).  Mata's response does not point to any evidence suggesting that this training was inadequate.  (Doc. # 25 at 25).  Accordingly, no reasonable jury could find that the City's training regime was inadequate, and the City is entitled to judgment as a matter of law.

Even if Mata could show that the City's training regime was inadequate, his failure to train or supervise theory would still fail because he has not established a genuine dispute of material fact regarding the City's deliberate indifference.  "'[D]eliberate indifference is a stringent standard of fault.'"  *Jackson*, 925 F.3d at 834 (quoting *Bd. Of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)).  To prove deliberate indifference, Mata must come forward with evidence of "prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess*, 735 F.3d at 478 (cleaned up).  Alternatively, Mata can demonstrate deliberate indifference through "evidence of a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation."  *Id.* at 836 (quotation omitted).

Here, Mata argues that the City was deliberately indifferent in the face of Ison's "multiple previous incidents of unwarranted and excessive force throughout his career." (Doc. # 1 ¶ 33).  The City, in its Motion for Summary Judgment, points to evidence refuting this allegation.  (Doc. # 18 at 15).  Although Ison had been sued "probably six" times for actions as a police officer prior to this incident, he asserts that none of those

cases resulted in a determination that he acted unconstitutionally or unlawfully.  (Doc. # 25-10 at 6:3-7:3 (noting that "there was one [lawsuit] that was settled by mediation. Other than that, they were – a majority were dismissed through the courts and there were a couple that were settled through the insurance")).  The City also points to evidence that most of these cases stem from Ison's service as a drug officer and that such lawsuits are "not uncommon."  (Doc. # 25-11 at 22:20-23:7 (Deposition of Tony Cantrell)).  Indeed, the City maintains that Ison has only been involved in one other incident involving the use of force.  (Doc. # 18 at 15; *see also* Doc. # 25-10 at 20:17-21:5).  However, that incident (*Hanshaw v. Ison, et al.*, No. 0:07-cv-42-DLB (E.D. Ky. 2007)) occurred in 2006, over eighteen years before Mata's arrest and Ison was only named in a supervisory capacity—he was not alleged to have used force against the complainant.  (*Id.*).  Further, the *Hanshaw* incident occurred before Ison's tenure with the Grayson Police Department.  (Doc. # 18 at 15-16).  In response, Mata fails to provide rebuttal evidence detailing a pattern of prior unconstitutional conduct that would put the City on notice that its use of force training was inadequate.  (Doc. # 25 at 25).  Instead, Mata merely reiterates his conclusory allegation that "Roy Ison had a significant history involving being sued multiple times."  (*Id.*).

Vague allegations that Ison had a "significant history" that involved "being sued multiple times" do not create a genuine dispute of fact.  *Assi v. Hanshaw*, 625 F. Supp. 3d 722, 751 (S.D. Ohio 2022) ("[Plaintiff's] allegations that there had been previous lawsuits regarding unconstitutional conduct at the [county jail] are vague—failing to provide specifics as to the nature of the alleged unconstitutional conduct (aside from the fact that one suit against Hanshaw alleged excessive force) and the outcome of those

lawsuits."); *Dillon v. Hamlin*, 718 F. Supp. 3d 733, 741 (S.D. Ohio 2024) ("[W]ithout more, vague allegations that previous cases are like this case in some unspecified way(s) are simply not enough to show a pattern of unconstitutional conduct that ought to have put Defendants on notice."). Because Mata fails to identify any countervailing evidence, no reasonable jury could find that the City was deliberately indifferent in light of a series of prior, similar unconstitutional conduct. Further, "one prior instance [of allegedly unconstitutional conduct] does not constitute a history of rights violations." *Stager v. Hanshaw*, No. 1:24-cv-99, 2025 WL 2207923, at *6 (S.D. Ohio Aug. 4, 2025). Rather, "the Sixth Circuit has emphasized that there must have been a sufficient number of prior incidents of a sufficiently similar type of misconduct to demonstrate that a municipal entity was on notice or constructive notice." *Assi*, 625 F. Supp. 3d at 750 (citing *D'Ambrosio*, 747 F.3d at 388 (6th Cir. 2014)). Because Mata fails to identify any evidence of such prior incidents, he fails to create a genuine dispute of material fact regarding the City's deliberate indifference, and the City is entitled to summary judgment on Mata's § 1983 claim based on inadequate training or supervision.

### 2.    Policy of Inaction

In addition to his failure to train theory, Mata argues that the "City itself had a culture of ratifying and failing to punish excessive force incidents." (Doc. # 25 at 25). He claims that "the Grayson Police Department has never kept a single use of force report related to Ison in his personnel file." (*Id.*). This amounts to an "inaction" theory. To prevail on a theory of inaction, a plaintiff must show:

> (1) the existence of a clear and persistent pattern of unconstitutional conduct; (2) "notice or constructive notice" on the part of the municipality; (3) the municipality's "tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount

to an official policy of inaction"; and (4) "that the [municipality's] custom was the 'moving force' or direct causal link in the constitutional deprivation." *Franklin v. Franklin Cnty.*, 115 F.4th 461, 472 (6th Cir. 2024) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (internal quotation omitted)).  To prevail on a theory of inaction, Mata must demonstrate "that the City consciously never acted when confronted with its employees' egregious and obviously unconstitutional conduct." *Arendale v. City of Memphis*, 519 F.3d 587, 600 (6th Cir. 2008).

Mata's claim fails at the first factor.  Showing a clear and persistent pattern of unconstitutional conduct requires more than vague allegations of a "significant history" or that a particular officer had been sued "multiple times."  (*See* Doc. # 25 at 25).  In ascertaining a pattern, the Sixth Circuit has considered both the number of similar incidents and their temporal proximity.  *See Peet v. City of Detroit*, 502 F.3d 557, 568 (6th Cir. 2007) (three instances of similar misconduct revealed in one police investigation did not establish a clear and persistent pattern); *Simpson v. City of Columbus*, 2:24-cv-4307, 2025 WL 1158081, at *6 (S.D. Ohio Apr. 21, 2025) ("two incidents, on their own, are likely too scant to allege a 'widespread, permanent, and well-settled' custom"); *Wallace v. Coffee Cnty.*, 852 F. App'x. 871, 876 (6th Cir. 2021) (finding six similar incidents over two months insufficient).  Further, any "prior examples of wrongdoing must violate the same constitutional rights [as the plaintiff's] and violate them in the same way." *Connick*, 563 U.S. at 62.  However, "the alleged pattern of similar unconstitutional conduct . . . need not be identical, or even 'almost identical' to that which a plaintiff alleges occurred in her case." *Franklin*, 115 F.4th at 472 (quoting *Simpkins v. Boyd Cnty. Fiscal Ct.*, No. 21-5477, 2022 WL 17748619, at *13 (6th Cir. 2007)).

As discussed above, the City has identified an absence of evidence indicating a pattern of unconstitutional conduct. In response, Mata does not point to evidence showing a "clear and consistent pattern" of similar conduct—either by Ison or any other Grayson Police Department officer. At most, Mata makes a vague reference to Ison's "significant history involving being sued multiple times." (Doc. # 25 at 25). The record indicates that Ison had been involved in approximately six lawsuits prior to the events underlying Mata's complaint. (Doc. # 25-10 at 6:7). However, of these six lawsuits, only one involved the use of force. (*Id.* at 20:17-21:5). Additionally, that incident occurred eighteen years prior to Mata's arrest at a time when Ison did not work for the City. Further, Ison acted only in a supervisory capacity during that incident. Mata neither refutes these facts nor offers countervailing evidence sufficient to create a genuine dispute. Because of this, Mata fails to carry his burden, and no reasonable jury could find a pattern of similar unconstitutional conduct by Ison himself or Grayson Police Department Officers generally.

Furthermore, Mata's vague allegation that "the Grayson Police Department has never kept a single use of force report related to Ison in his personnel file," even if accepted as true, does not constitute deliberate indifference to a pattern of unconstitutional conduct. Although plaintiffs can bring § 1983 claims against municipalities "where they do not conduct reviews or monitor the performance of their employees, plaintiffs must also show that the municipality lacks such a process out of deliberate indifference for the constitutional violations that may occur as a result." *Amerson v. Waterford Twp.*, 562 F. App'x. 484, 492 (6th Cir. 2014). Mata does not point the Court to any evidence in the record supporting the notion that the City's allegedly

faulty recordkeeping resulted from its deliberate indifference to constitutional violations. In his deposition, Grayson Police Chief Tony Cantrell asserted that, under the previous Chief of Police, all use of force reports concerning Grayson Police Officers were kept in "one big folder" that "the chief kept [] in his office."  (Doc. # 25-11 at 22:1-2).  Once Cantrell took charge in 2023, however, the Grayson Police Department moved to a filing system pursuant to which it keeps such reports "in separate folders in a locked filing cabinet where it's supposed to be."  (*Id.* at 22:2-4).

Construing this evidence in the light most favorable to Mata, the City—at most—had a suboptimal method of organizing its personnel files in the past.  However, this alone does not constitute a pattern of unconstitutional conduct nor show that the City was deliberately indifferent to a pattern of excessive force.  *See Amerson*, 562 F. App'x. at 492 (holding that a municipality's failure to conduct performance evaluations was not enough to show deliberate indifference absent "a record of officers going unpunished for excessive force").  Mere negligence or "a collection of sloppy, or even reckless, oversights" does not equate to the kind of deliberate indifference required to sustain a § 1983 claim.  *Claiborne Cnty.*, 103 F.3d at 508; *see also Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997) ("'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.").  Since the record contains no evidence that Ison or other Grayson Police Officers had engaged in a pattern of incidents involving an unconstitutional use of force, no reasonable jury could find that the City's recordkeeping practices resulted from a deliberate indifference to such a pattern.  Therefore, the City is entitled to summary judgment.

### D.  Count IV – Battery

Under Kentucky law, the common law tort of civil battery consists of the "unlawful touching of another."  *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000) (citation omitted).  A person is liable for battery if "(a) he acts intending to cause a harmful or offensive contact with the person of the other…and (b) a harmful contact with the person of the other directly or indirectly results."  *Id.*  (quoting Restatement (Second) of Torts § 13 (1965)).  The Sixth Circuit has held that the "use of excessive force by a police officer constitutes the intentional tort of battery."  *Browning*, 14 F.4th at 531 (citing *Ali v. City of Louisville*, No. 3:03-cv-427-R, 2006 WL 2663018, at *8 (W.D. Ky. Sept. 15, 2006)).

However, "[o]fficers receive official immunity—the state analogue of qualified immunity—from tort claims like battery if they performed '(1) discretionary acts or functions . . .; (2) in good faith; and (3) within the scope of [their] authority.'"  *Kirilova v. Braun*, No. 21-5649, 2022 WL 247751, at *6 (6th Cir. 2022) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)).  Bad faith can be "predicated on a violation of constitutional, statutory, or [some] other clearly established right,. . . *i.e.*, objective unreasonableness; or if the officer…willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive."  *Yanero*, 65 S.W.3d at 522.

As discussed above, the significant differences between Mata's and Ison's accounts gives rise to a genuine issue of material fact regarding whether Ison used excessive force.  Crediting Mata's version of the facts, a reasonable jury could find that Ison is liable for battery.  Therefore, summary judgment is not appropriate.  *See Steger v. Willis*, No. 2:24-cv-095-DCR, 2025 WL 2792118, at *7 (E.D. Ky. Sept. 30, 2025)

(denying summary judgment on a plaintiff's battery claim under Kentucky law where a genuine issue of material fact existed regarding the officer's use of excessive force).

Likewise, for the reasons explained above, Ison is not entitled to qualified official immunity with respect to the state law battery claim because genuine disputes of material fact exist concerning whether his use of force violated Mata's clearly established constitutional rights. *See id.*; *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) ("[R]esolution of the state-law immunity issue is heavily dependent on the same disputed material facts as the excessive-force determination under § 1983."). At the time of Mata's arrest, the Sixth Circuit had declared it "clearly established in this circuit that an individual has a constitutional right not to be tased when he or she is not actively resisting." *Saalim*, 97 F.4th at 1009 (quoting *Browning*, 18 F.4th at 450). Similarly, the Sixth Circuit had recognized a clearly established right not to be gratuitously assaulted while restrained and subdued. *See, e.g., Coley*, 799 F.3d at 540. Because, under Mata's version of the facts, Ison violated "clearly established right[s] which a person in [his] position presumptively would have known [were] afforded to a person in [Mata's] position," he acted in bad faith and is not entitled to qualified official immunity. *Yanero*, 65 S.W.3d at 523.

### E.  Count V – State Law Malicious Prosecution

In Kentucky, a plaintiff may establish a claim of malicious prosecution by showing that:

1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding…against the plaintiff;

2) the defendant acted without probable cause;

3) the defendant acted with malice, which, in the criminal context means seeking to achieve a purpose other than bringing the offender to justice…;

4) the proceeding…terminated in favor of the person against whom it was brought; and

5) the plaintiff suffered damages as a result of the proceeding.

*Estep v. Combs*, 467 F. Supp. 3d 476, 499 (E.D. Ky. 2020) (quoting *Martin v. O'Daniel*, 507 S.W.3d 1, 11 (Ky. 2016)).  Ison challenges only the malice and probable cause elements of Mata's claim, arguing that he is entitled to summary judgment because "the record is devoid of malice on the part of Ofc. Ison and because Ofc. Ison had probable cause to charge Mata with menacing and resisting arrest."  (*Id.*).

With respect to the probable cause determination, "Kentucky law is unclear whether, in the context of multiple charges, the probable cause element requires a malicious prosecution plaintiff to show that no probable cause existed on any of the charges."[10]  *Smith v. Peyman*, 93 F. Supp. 3d 738, 750 (E.D. Ky. 2015).  However, both the Eastern and Western Districts of Kentucky have predicted that "the Kentucky Supreme Court would hold that a defendant initiating criminal proceedings on multiple charges is not necessarily insulated in a malicious prosecution case merely because the prosecution of one of the charges was justified."  *Id.* (citing *Carter v. Porter*, No. 5:08-cv-246-REW, 2011 WL 778408, at *1-2 (E.D. Ky. Mar. 1, 2011); *Martin v. Coyt*, No. 1:10-cv-176, 2013 WL 1187940, at *4-5 (W.D. Ky. Mar. 21, 2013)).

---

[10]    Despite the recent developments in the federal jurisprudence concerning malicious prosecution in violation of the Fourth Amendment (*see Howse*, 953 F.3d at 409 and *Chiaverini*, 602 U.S. at 563), the Kentucky tort of malicious prosecution remains unaffected, as it is rooted in common law rather than the Federal Constitution.  *See Estep*, 467 F. Supp. 3d at 499 n. 24.

Similar to Mata's malicious prosecution claim under federal law, factual disputes preclude the Court from granting Ison's Motion for Summary Judgment. *See Estep*, 467 F. Supp. 3d at 500 (holding that "persisting factual disputes concerning probable cause for the menacing and resisting charges preclude summary judgment on the state-tort's second element"). Accepting Mata's version of the facts, Ison did not have probable cause to charge Mata with either menacing or resisting arrest under Kentucky law. Therefore, Ison is not entitled to summary judgment on the grounds that he had probable cause to arrest and charge Mata.

Next, Ison argues that, because he did not act with malice, he is entitled to summary judgment on Mata's state law malicious prosecution claim. (Doc. # 18-1 at 47). "[M]alice can be inferred from [a] lack of probable cause." *Massey v. McKinley*, 690 S.W.2d 131, 134 (Ky. Ct. App. 1985). However, a lack of probable cause, on its own, does not invariably imply malice. *Mosier v. McFarland*, 269 Ky. 214, 106 S.W.2d 641, 642 (Ky. 1937). A jury may not imply malice "if all the facts disclosed lead to a different conclusion." *Id.* A lack of probable cause, when coupled with "[o]ther evidence of unlawful motive," supports a finding of malice. *Estep*, 467 F. Supp. 3d at 500.

In his deposition, Mata testified that, after he had been placed in a police cruiser for transport to jail, he spoke with the officer driving the vehicle. (Doc. # 25-8 at 42:2-9). Ison, in his own deposition, stated that he drove Mata to the jail. (Doc. # 25-10 at 24:20-22). Mata testified that, during their conversation in the police cruiser, Ison stated that he saw no reason to arrest Mata but that, since an officer deployed his taser, the officers had to take Mata to jail. (Doc. # 25-8 at 42:2-9). Likewise, Joanne Williams testified at her deposition that she overheard a conversation between Mata and an officer at the

scene.  (Doc. # 25-9 at 59:12-23).  In this conversation, an officer told Mata "[w]ell, you know, I know it's a crock of crap, but we have to charge you with something" because a taser was discharged.  (*Id.*).  Mata argues that these statements bolster his contention that Ison unlawfully charged Mata with menacing and resisting arrest "in order to lend credence to [Ison's] unnecessary and unlawful force."  (Doc. # 25 at 1).  On Mata's version of the facts, Ison concocted the menacing and resisting arrest charges not to bring Mata to justice, but to cover for Ison's allegedly inappropriate deployment of the taser.  Additionally, accepting Mata's version of the facts, Ison used excessive force in pulling Mata from the vehicle, tasing him, and punching him in the back.  Such excessive force "provides further malice indicia."  *Estep*, 467 F. Supp. 3d at 500.

In the aggregate, the probable cause doubts clouding menacing and resisting arrest, the officers' statements that Mata was charged solely to justify Ison's use of the taser, and Ison's excessive force allows a reasonable jury to conclude that Ison acted with malice by charging Mata with menacing and resisting arrest.  *See id.* ("Estep's history with Combs, Plaintiff's allegations of handcuff taunting, Combs's failure to respond to Estep's handcuff pain protests, and probable cause doubts concerning menacing and resisting supply adequate circumstantial grounds" for a finding of malice.).  Because a reasonable jury could find that Ison acted with malice, a jury—not the Court— must make the call.  Accordingly, the Court denies summary judgment on Mata's state law malicious prosecution claim.

## IV.    CONCLUSION

The purpose of summary judgment is "determining whether there is a need for trial – whether, in other words, there are any genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Here, several genuine factual disputes exist that can be reasonably resolved in favor of either party. Therefore, to the extent such disputes are present, summary judgment must be denied. Accordingly,

**IT IS ORDERED** as follows:

(1)    Defendants' Motion for Summary Judgment (Doc. # 18) is **GRANTED IN PART** and **DENIED IN PART**, being **granted** with respect to Count III, and **denied** with respect to Counts I, II, IV, and V;

(2)    The remaining parties are **DIRECTED** to file a **Joint Status Report** within **thirty (30) days from the date of entry of this Order** indicating whether they would be amenable to pursuing mediation, either privately or court-facilitated, as to the remaining claims.

(3)    Upon receiving the Status Report referenced in paragraph (2) above, the Court will enter a follow-up pretrial Order addressing next steps in this case.

This 1st day of December, 2025.



Signed By:

*David L. Bunning*    DB

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Ashland Civil\2023\23-122 MOO re MSJ.docx